## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CASE NO.:

SCOTT DILONARDO,

     Plaintiff,

v.

SP PLUS CORPORATION,
a Foreign Profit Corporation,

     Defendant.

_____/

## COMPLAINT AND REQUEST FOR DECLARATORY
## RELIEF DEMAND FOR JURY TRIAL

Plaintiff, SCOTT DILONARDO ("Mr. DiLonardo" or "Plaintiff") files this

Complaint against Defendant, SP PLUS CORPORATION ("SP PLUS" or

"Defendant"), and states as follows:

## INTRODUCTION

1.     Plaintiff brings this action pursuant to the Family and Medical Leave

Act, as amended, 29 U.S.C. § 2601, *et seq*. ("FMLA"), the Americans with

Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), and Chapter 760 of the Florida

Civil Rights Act ("FCRA") to recover from Defendant back pay, an equal amount

as liquidated damages, other monetary damages, equitable relief, front pay,

declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## JURISDICTION, VENUE AND FMLA COVERAGE

2.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1337 and the FMLA, and has the authority to grant declaratory relief under the FMLA and pursuant to 28 U.S.C. § 2201, *et seq*.

3.      This Court has jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331, as they arise under 42 U.S.C. § 12101, *et seq*.

4.      This Court also has supplemental jurisdiction over Plaintiff's FCRA claims, as they arise out of the same operative facts and circumstances as his FMLA/ADA claims.

5.      At all times relevant hereto, Plaintiff was an employee of Defendant.

6.      Plaintiff worked for Defendant in Pinellas County, Florida, and this venue is therefore proper.

7.      Defendant is a foreign profit corporation that is located and does business in Pinellas County, Florida, and is therefore within the jurisdiction of the Court.

8.      At all times relevant hereto, Defendant was an employer covered by the FMLA, because it was engaged in commerce or in an industry affecting commerce that employed 50 or more employees within 75 miles of where Plaintiff worked, for

each working day during each of 20 or more calendar workweeks, prior to seeking leave under the FMLA.

9.     At all times relevant hereto, Plaintiff was an employee entitled to leave under the FMLA, based on the fact that he: (a) suffered from a serious health condition as defined by the FMLA which necessitated FMLA leave; and (b) was employed by Defendant for at least 12 months and worked at least 1,250 hours during the relevant 12-month period prior to him seeking to exercise his rights to FMLA leave.

10.     Plaintiff is a disabled male. At all times material, Plaintiff was protected during his employment with Defendant by the FCRA and ADA because:

a.     Plaintiff was a disabled or "perceived as disabled" employee who suffered discrimination and harassment because of his disability or "perceived disability" by Defendant; and

b.     Plaintiff was retaliated against and suffered adverse employment action and was subjected to an increasingly hostile work environment as a result of his disability or "perceived disability."

11.     Defendant was at all times an "employer" as envisioned by the ADA as well as §760.02(7), Fla. Stat.

## CONDITIONS PRECEDENT

12.    On or around May 26, 2020, Plaintiff dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") alleging disability discrimination and retaliation against Defendant.

13.    More than 180 days have passed since the filing of the Charge of Discrimination.

14.    On October 21, 2020, the EEOC mailed Plaintiff a Notice of Right to Sue against Defendant, giving Plaintiff the right to bring a civil action on his claims within 90 days of his receipt of the same.

15.    Plaintiff timely files this action within the applicable period of limitations against Defendant.

16.    All conditions precedent to this action have been satisfied and/or waived.

## FACTUAL ALLEGATIONS

17.    Mr. DiLonardo worked for SP PLUS as a Supervisor from October 1, 2016, until his unlawful and retaliatory termination on December 13,2019.

18.    Mr. DiLonardo disclosed to SP PLUS when he was hired that he suffers a disability and chronic, serious health condition, bipolar disorder, resulting from his service in the United States Marine Corps.

19.     Mr. DiLonardo also discussed his disability and chronic, serious health condition with one of his SP PLUS Managers, John Peake, during his employment with SP PLUS.

20.     In late September or early October of 2019, SP PLUS supervisor Fednet Revolte approached Mr. DiLonardo and asked whether Mr. DiLonardo would have a problem with his schedule being changed so that he routinely had to report to work at 6:00 A.M.

21.     In response, Mr. DiLonardo informed Mr. Revolte that, in fact, he treats his disability with medication that makes it very difficult for him to wake up and work early in the morning, as SP PLUS was proposing.

22.     Mr. DiLonardo's disclosure should have prompted SP PLUS to advise him of his rights and obligations under the FMLA, and provide him FMLA paperwork.

23.     SP PLUS nevertheless failed to do so.

24.     SP PLUS's failure to do so constituted unlawful FMLA interference.

25.     Mr. DiLonardo therefore asked Mr. Revolte for the reasonable accommodation of remaining on his regular schedule, and not being routinely required to begin work so early in the morning.

26.     SP PLUS denied this very modest and reasonable request.

27.     Instead, Mr. Revolte cajoled Mr. DiLonardo into trying the new schedule out, and promised Mr. DiLonardo that if the new schedule did not work out for him, that he could always switch back to his regular schedule without retribution by SP PLUS.

28.     Mr. DiLonardo objected at that time that SP PLUS's actions constituted unlawful discrimination in violation of the ADA and the FCRA.

29.     Mr. DiLonardo's objections constituted protected activity under the ADA and the FCRA.

30.     Over the next month or two, Mr. DiLonardo's disability and chronic, serious health condition, and the medication he used to treat and address it, caused him to be late to work once or twice.

31.     Intermittent unpaid leave pursuant to the FMLA could have enabled Mr. DiLonardo to treat and address such flareups of his chronic, serious health condition.

32.     In the meanwhile, Mr. Revolte left his position with SP PLUS.

33.     In early November of 2019, Mr. DiLonardo therefore approached Mr. Revolte's replacement, Marilyn Jimenez, and asked Ms. Jimenez whether he could now switch back to his regular schedule, as SP PLUS had promised him that he could do at any time, if the new schedule did not work out for him.

34.     In response, Ms. Jimenez stated flatly, "it cannot be changed."

35.     Since another SP PLUS Supervisor was already scheduled for Mr. DiLonardo's early morning shift, Mr. DiLonardo's area was appropriately covered already, and Mr. DiLonardo's request for accommodation presented no burden or problem to SP PLUS.

36.     Furthermore, SP PLUS had several other shifts with later start times available, and accommodating Mr. DiLonardo would have been simple.

37.     Mr. DiLonardo objected to Ms. Jimenez that SP PLUS's actions constituted unlawful discrimination in violation of the ADA and the FCRA.

38.     Mr. DiLonardo's objections constituted protected activity under the ADA and the FCRA.

39.     Mr. DiLonardo asked Ms. Jimenez whether his schedule could be changed back as a reasonable accommodation for his disability, but Ms. Jimenez still refused.

40.     Mr. DiLonardo was late to work one time in early December of 2019 due to a flareup of his disabling, chronic, serious health condition, and the medication that he took to treat and address same.

41.     On December 13, 2019, SP PLUS supervisors including Bruce Hunter and Ms. Jimenez informed Mr. DiLonardo that SP PLUS had decided to terminate his employment, effective immediately.

42.     Incredulous, Mr. DiLonardo explained to these individuals, "you two are well aware of my condition.  I was told that I would be able to change the schedule back."

43.     In response, Mr. DiLonardo was told, "we're sorry, but this is what's happening."

44.     Mr. DiLonardo attempted on multiple occasions to engage SP PLUS in a conversation about potential reasonable accommodations for his disability, but Defendant's managers declined to participate in such a conversation.

45.     The timing of events surrounding Mr. DiLonardo's termination establishes that any non-discriminatory, non-interfering, or non-retaliatory reason for the termination offered by SP PLUS is pure pretext.

46.     Such a discriminatory and unlawful termination is exactly the type of adverse employment action that the ADA, the FCRA, and the FMLA were intended to prevent.

47.     An employer is required to provide its disabled employees with a reasonable accommodation, if that reasonable accommodation would allow that employee to perform the essential functions of his job, unless doing so would impose an undue hardship.  *Smith v. Avatar Properties, Inc.*, 714 So. 2d 1103, 1107 (Fla. 5th DCA 1998).

48.     Mr. DiLonardo is an individual with a disability who, with minimal reasonable accommodation, was fully capable of performing the essential functions of his job as a Supervisor.

49.     Allowing Mr. DiLonardo to return to his prior schedule would have been a reasonable accommodation.

50.     This accommodation would have imposed no undue hardship on Defendant.

51.     In reality, Defendant's termination of Mr. DiLonardo stemmed from its discriminatory animus toward his disclosure of his chronic, serious health condition and of his potential need for unpaid leave, which should have been protected FMLA leave, and of his need for accommodation under the ADA/FCRA.

52.     By reason of the foregoing, Defendant's actions, and non-actions, affected the "terms, conditions or privileges" of Plaintiff's employment as envisioned by the ADA and the FCRA.

53.     The timing of Plaintiff's termination makes the causal connection between his attempted use of FMLA leave, his request for reasonable accommodation under the ADA/FCRA, and his termination sufficiently clear.

54.     As a result of the foregoing, Defendant interfered with Plaintiff's FMLA rights.

55.    Defendant also retaliated against Plaintiff for attempting to utilize and/or utilizing proper and authorized FMLA leave.

56.    Any other reason given for Plaintiff's termination is a pretext, designed to cover up FMLA interference and retaliation, and disability discrimination and retaliation.

57.    Defendant did not have a good faith basis for its actions.

58.    Defendant did not have a legitimate, non-retaliatory reason, for its actions.

59.    Defendant's adverse employment actions were taken to interfere with, and in retaliation for, Mr. DiLonardo notifying SP PLUS of his chronic, serious health condition, and in retaliation for Mr. DiLonardo attempting to utilize unpaid leave pursuant to the FMLA in order to treat and address same.

60.    Defendant's actions are the exact type of unfair and retaliatory employment practices the ADA, FCRA, and FMLA were intended to prevent.

61.    Any reason provided by Defendant for its actions is a pretext, designed to cover up FMLA interference and retaliation.

62.    Defendant's conduct constitutes intentional interference and retaliation under the FMLA.

63.    The timing of Plaintiff's attempted use of what should have been protected FMLA leave, and Defendant's termination of his employment, alone

demonstrates a causal and temporal connection between his protected activity and the illegal actions taken against him by Defendant.

64.     Defendant purposefully and intentionally interfered with and retaliated against Plaintiff for his attempted utilization of what should have been protected FMLA leave.

65.     The facts surrounding Plaintiff's termination also create a strong inference of disability discrimination in violation of the ADA/FCRA.

66.     Defendant was aware of Plaintiff's ADA/FCRA-protected disability and need for accommodation.

67.     "Reasonable accommodation" under the ADA may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . .and other similar accommodations." 42 U.S.C. § 12111(9)(B).

68.     Defendant, however, being well aware of Plaintiff's condition, discriminated and retaliated against Plaintiff for suffering occasional flare-ups of his disability, and for requesting reasonable accommodation.

69.     In short, despite the availability of reasonable accommodation under the ADA and FCRA, Defendant discriminated against Mr. DiLonardo based solely upon his disability.

70.    At all times material hereto, Plaintiff was ready, willing and able to perform his job duties and otherwise qualified for his position, with "reasonable accommodation."

71.    Pleading in the alternative, Defendant perceived Plaintiff as being "disabled," and therefore unable to perform the essential functions of his position, despite the fact that Plaintiff could perform same with reasonable accommodation.

72.    Pleading in the alternative, Plaintiff's impairment did not substantially limit a major life activity but was treated by Defendant as if it did.

73.    Pleading in the alternative, Plaintiff's medical condition constituted an impairment that limited a major life activity only because of Defendant's attitude toward the impairment.

74.    Pleading in the alternative, Plaintiff had no impairment, whatsoever, but was treated by Defendant as having a disability as recognized by the ADA/FCRA.

75.    Plaintiff was a disabled individual, or otherwise perceived as disabled by Defendant, during his employment.  Therefore, he is a protected class member as envisioned by the ADA and the FCRA.

76.    Plaintiff suffered sufficiently severe and pervasive treatment, and ultimately termination, because of his disability and/or "perceived disability."

77.    As a result of Defendant's illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which he is entitled.

78.    Defendant lacked a subjective or objective good faith basis for its actions, and Plaintiff is therefore entitled to liquidated damages.

79.    Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent him in the litigation and has agreed to pay the firm a reasonable fee for its services.

## COUNT I
## UNLAWFUL INTERFERENCE UNDER THE FMLA

80.    Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 2, 5 through 9, 15 through 27, 30 through 36, 40 through 43, 45 through 46, 51, 53 through 64, and 77 through 79, above, as if fully set forth herein.

81.    At all times relevant hereto, Plaintiff was protected by the FMLA.

82.    At all times relevant hereto, Defendant interfered with Plaintiff by harassing and targeting him after he disclosed his serious health condition, and by failing to provide him FMLA paperwork or advise him of his rights and obligations under the FMLA in response to his disclosure of his serious health condition.

83.    At all times relevant hereto, Plaintiff was protected from interference under the FMLA.

84.     As a result of Defendant's willful and unlawful acts by interfering with Plaintiff for exercising or attempting to exercise his rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

85.     As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT II
## UNLAWFUL RETALIATION UNDER THE FMLA

86.     Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 2, 5 through 9, 15 through 27, 30 through 36, 40 through 43, 45 through 46, 51, 53 through 64, and 77 through 79, above, as if fully set forth herein.

87.     At all times relevant hereto, Plaintiff was protected by the FMLA.

88.     At all times relevant hereto, Defendant retaliated against Plaintiff by firing him for his use or attempted use of FMLA-protected leave.

89.     At all times relevant hereto, Plaintiff was protected from retaliation under the FMLA.

90.    At all times relevant hereto, and for purposes of the FMLA retaliation claim, Defendant acted with the intent to retaliate against Plaintiff, because Plaintiff exercised or attempted to exercise his rights to take approved leave pursuant to the FMLA.

91.    As a result of Defendant's intentional, willful and unlawful acts by retaliating against Plaintiff for exercising or attempting to exercise his rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

92.    As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT III
## DISCRIMINATION UNDER THE ADA BASED ON DISABILITY

93.    Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 7, 10 through 21, 25 through 30, 32 through 53, 56 through 58, 60, 65 through 77, and 79, above, as if fully set forth herein.

94.    The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the ADA.

95.    The discrimination to which Plaintiff was subjected was based on his disability and/or "perceived disability."

96.    The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

97.    Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

98.    The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

99.    Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 12205.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT IV
## DISCRIMINATION UNDER THE FLORIDA CIVIL RIGHTS ACT
## BASED ON DISABILITY

100.   Plaintiff reincorporates and readopts the allegations contained within Paragraphs 1 through 7, 10 through 21, 25 through 30, 32 through 53, 56 through 58, 60, 65 through 77, and 79, above, as if fully set forth herein.

101.   The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the FCRA, Chapter 760, Florida Statutes.

102.   The discrimination to which Plaintiff was subjected was based on his disability, or "perceived disability."

103.   The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

104.   The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

105.   Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to section 760.11(5), Florida Statutes.

106.   Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT V
## RETALIATION UNDER THE ADA BASED ON DISABILITY

107.   Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 7, 10 through 21, 25 through 30, 32 through 53, 56 through 58, 60, 65 through 77, and 79, above, as if fully set forth herein.

108.   Plaintiff was terminated within close temporal proximity of his objection to Defendant that he felt he was being discriminated against based on his disability.

109.   Plaintiff's objections constituted protected activity under the ADA.

110.   Plaintiff was terminated as a direct result of his objections to what he reasonably believed to be disability discrimination.

111.   Plaintiff's objections to Defendant's illegal conduct, and his termination, are causally related.

112.   Defendant's stated reasons for Plaintiff's termination are a pretext.

113.   The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

114.   The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it and others from such conduct in the future.

115.   Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 12205.

116.   Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT VI
## RETALIATION UNDER THE FLORIDA CIVIL RIGHTS ACT
## BASED ON DISABILITY

117.   Plaintiff reincorporates and readopts the allegations contained within Paragraphs 1 through 7, 10 through 21, 25 through 30, 32 through 53, 56 through 58, 60, 65 through 77, and 79, above, as if fully set forth herein.

118.   Plaintiff was terminated within close temporal proximity of his objection to Defendant that he felt he was being discriminated against based on his disability.

119.   Plaintiff's objections constituted protected activity under the FCRA.

120.   Plaintiff was terminated as a direct result of his objections to what he reasonably believed to be disability discrimination.

121.   Plaintiff's objections to Defendant's illegal conduct, and his termination, are causally related.

122.   Defendant's stated reasons for Plaintiff's termination are a pretext.

123.   The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

124.   The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it and others from such conduct in the future.

125.   Plaintiff is entitled to recover his reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

126.   Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other relief as is deemed proper by this Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 15th day of January, 2021.

Respectfully Submitted,

**By:** */s/ Noah Storch*
Noah E. Storch, Esq.
Florida Bar No. 0085476
RICHARD CELLER LEGAL, P.A.
10368 W. SR 84, Suite 103
Davie, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail: noah@floridaovertimelawyer.com